# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: RELIANCE STANDARD LIFE INSURANCE CO.**, *et al.* | **CIVIL ACTION NOS. 19-331, 19-332, 19-333, 19-334, 19-335, 19-336, 19-338, 19-339, 19-340, 19-341, 19-342, 19-343** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                               **June 24, 2019**

Twelve individual foreign Plaintiffs[1] each filed lawsuits in the Philadelphia Court of Common Pleas against Defendants Reliance Standard Life Insurance Company and RSL Group and Blanket Insurance Trust (collectively, "Reliance"), alleging breach of contract and bad faith claims that stem from Reliance's denial of their disability benefits. Reliance removed the actions to federal court, asserting federal-question jurisdiction under ERISA. Eleven of the cases were then reassigned to this Court as being related to the first docketed case, pursuant to Local Rule of Civil Procedure for the Eastern District of Pennsylvania 40.1.[2] Plaintiffs have filed a joint motion to remand on grounds that the Court lacks subject matter jurisdiction.[3] Upon consideration of Plaintiffs' motion to remand, and the responses thereto, the motion will be granted for the following reasons.

---

[1] Those individuals are Fadil Mehmeti, Xhevat Hamiti, Bujar Zymberi, Arben Maloku, Muharrem Maloku, Halit Mjeku, Gezim Topalli, Isak Sylejmani, Naim Musliu, Savdulla Sallahu, Edmond Zeneli, and Astrit Hetemi.

[2] As mentioned in a previous order, these cases were deemed related to the first docketed case of the twelve above-captioned cases, Civil Action No. 19-331, which had been randomly assigned to this Judge's calendar. The transfers were therefore merely based on a "luck of the draw."

[3] Plaintiffs also filed a motion to consolidate the cases and Reliance moved to dismiss Plaintiffs' claims as being preempted by ERISA. These motions have been held in abeyance pending the decision on the motion to remand.

## I. BACKGROUND

Except where noted, the relevant facts are generally undisputed, and involve a denial of disability benefits to foreign nationals working outside of the United States under disability insurance policies.[4]

Plaintiffs are citizens of the Republic of Kosovo who each signed annual contracts to work various vehicle- and machine-related jobs in Afghanistan to support the American military effort.[5] These annual employment contracts were with AECOM/GSS Ltd., an offshore Cayman Islands company which is related to AECOM, a United States government contracting company based in Los Angeles, California. As part of their employment, Plaintiffs were offered a benefits package with voluntary short-term disability ("STD") and long-term disability ("LTD") insurance policies issued and administered by Reliance, an Illinois corporation with its principal place of business in Philadelphia, Pennsylvania. The Reliance-issued policies stated: "This policy is delivered in Rhode Island and is governed by its laws and/or the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, where applicable."

Plaintiffs each applied for and were accepted as insureds under the STD and LTD policies, and paid the premiums. During the course of their employment, Plaintiffs allegedly became disabled and unable to work.[6] Plaintiffs' claims for STD and LTD claims were denied

---

[4] These relevant facts also were considered in the Court's previous ruling in *Bajrami v. Reliance Standard Life Insurance Co.*, 334 F. Supp. 3d 659 (E.D. Pa. 2018).

[5] Plaintiffs' job titles included: Driver, Heavy Vehicle Mechanic, Senior Mechanic, Forklift Operator, General Inspector, and Supply Specialist. There is nothing in the record at this time to suggest that Plaintiffs' jobs involved any direct engagement with commerce in the United States, as they worked exclusively in Afghanistan.

[6] According to the Complaints, the majority of Plaintiffs claimed disability based on exposure to traumatic experiences, such as continuous ground and rocket attacks where they were working. Some Plaintiffs also allegedly endured physical injuries due to the labor-intensive demands of engaging with heavy machinery.

by Reliance. According to Plaintiffs, they have been deprived of funds which could have helped them obtain necessary medical treatment in a timely fashion.

II.     **LEGAL STANDARD**

Removal from and remand to state court are governed by 28 U.S.C. §§ 1441, 1446, and 1447. Section 1441 provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants . . . ."[7] After removal, a plaintiff may file a motion to remand based on either "any defect" in removal procedure,[8] or lack of subject matter jurisdiction.[9] "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."[10] The statutes are strictly construed against removal.[11]

III.    **DISCUSSION**

Reliance filed a notice of removal as to each of the actions solely based on federal-question jurisdiction under ERISA. Although Plaintiffs' breach of contract and bad faith claims arise out of state law, the cause of action is preempted if Plaintiffs, "at some point in time, could

---

[7] 28 U.S.C. § 1441(a).

[8] Plaintiffs argue that remand is warranted because Reliance failed to promptly file a copy of the notice of removal with the Philadelphia Court of Common Pleas. As part of the removal procedures, "[*p*]*romptly after* the filing of such notice of removal of a civil action the defendant . . . shall file a copy of the notice with the clerk of such State court, which shall effect the removal . . . ." 28 U.S.C. § 1446(d) (emphasis added).

Here, Reliance did not file notice in state court until 11 days after filing the notice of removal. As this Court already mentioned in *Bajrami*, courts within this District have repeatedly held that filing notice to the state court within one month after removal in federal court may be considered "prompt," as required by § 1446. *Ciglar v. Ruby Tuesday, Inc.*, No. 09-239, 2009 WL 737367, at *4 (E.D. Pa. Mar. 19, 2009) (delay of one month was "relatively short" and "harmless") (citing *Calderon v. Pathmark Stores, Inc.*, 101 F. Supp. 2d 246, 248 (S.D.N.Y. 2000)); *see also Boyce v. St. Paul Fire & Marine Ins. Co.*, No. 92-6525, 1993 WL 21210, at *3 (E.D. Pa. Jan. 28, 1993) ("Failure to file a copy of the petition with the state court does not defeat jurisdiction.") (citing *Dukes v. S.C. Ins. Co.*, 770 F.2d 545 (5th Cir. 1985)). Plaintiffs' procedural defect argument is therefore unpersuasive under the circumstances.

[9] 28 U.S.C. § 1447(c).

[10] *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

[11] *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

have brought [their] claim[s] under" the ERISA statute.[12]  This rule is specific to the context of ERISA, and is far different from the typical "well-pleaded complaint rule,"[13] because "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."[14]

Recently, in *Bajrami v. Reliance Standard Life Insurance Co.*, this Court held that a foreign national working outside of the United States was not contemplated as falling under the scope of ERISA based on the extraterritoriality doctrine.[15]  Nevertheless, the Court has fully considered the instant motion and responses, independent of this earlier decision.

The Supreme Court has held under the extraterritoriality doctrine that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none."[16]  This language is an extension of a longstanding principle in the law which has stated that "unless there is an affirmative intention of Congress clearly expressed" to give a statute extraterritorial reach, "[courts] must presume it is primarily concerned with domestic conditions."[17]  Over the last century, the Supreme Court has found there to be a presumption against extraterritoriality in various employment-related statutes, such as Title VII,[18] the National Labor Relations Act,[19] and

---

[12] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

[13] *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." (citation omitted)).

[14] *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987); *see also Davila*, 542 U.S. at 210 ("[I]f an individual, at some point in time, could have brought his claim under ERISA[], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completed preempted by ERISA[].").

[15] *Bajrami*, 334 F. Supp. 3d at 664.

[16] *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (ruling in a case under the federal securities laws).

[17] *Id.* (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) ("*ARAMCO*")).

[18] *ARAMCO*, 499 U.S. at 258–59.

[19] *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 19 (1963).

the Federal Employees Liability Act.[20] The presumption does not prevent Congress from reaching outside the borders of the United States, when it manifests an intent to do so.[21]

As neither the Supreme Court nor any court of appeals has yet addressed the extraterritoriality doctrine as it relates to ERISA, the Court examines its legislative history and statutory language.

ERISA provides a uniform federal structure for regulating the administration of employee welfare and pension benefit plans.[22] In relevant part, it grants employees the right to bring claims against employers and plan administrators to protect and enforce obligations owed under those plans.[23] During ERISA's enactment, the House Committee on Education and Labor stated that its "most important purpose w[ould] be to assure American workers that they may look forward, with anticipation, to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society."[24] More generally, ERISA was referred to by legislators as "the greatest development in the life of the American worker since the Social Security Act of 1935."[25]

---

[20] *N.Y. Cent. R. Co. v. Chisholm*, 268 U.S. 29, 31 (1925).

[21] *See ARAMCO*, 499 U.S. at 248 ("Both parties concede, as they must, that Congress has the authority to enforce its laws beyond the territorial boundaries of the United States."). For example, the Supreme Court held that a United States citizen working for a United States company in Saudi Arabia could not bring a Title VII claim for discrimination against his employer in the absence of language in the statute indicating that Congress intended the law to apply outside of the country. *Id.* at 258–59. In response to this holding, Congress amended Title VII to give it extraterritorial reach over citizens of the United States working in foreign countries. *See* 42 U.S.C. § 2000e(f) ("With respect to employment in a foreign country, [the term 'employee'] includes an individual who is a citizen of the United States."); *id.* § 2000e–1(c) ("If an employer controls a corporation whose place of incorporation is a foreign country, any practice prohibited by section 2000e–2 or 2000e–3 of this title engaged in by such corporation shall be presumed to be engaged in by such employer.").

[22] 29 U.S.C. §§ 1002(1), (2).

[23] *Id.* § 1132(a)(1)(B).

[24] H.R. Rep. No. 93-533, at 8 (1973), *as reprinted in* 1974 U.S.C.C.A.N. 4639, 4646.

[25] 120 Cong. Rec. 15,742, 15,758, 15,770 (1974) (remarks of Senators Javits, Bentsen, and Schweiker).

ERISA's domestic intentions are further indicated by its broad statutory language regarding what constitutes an employee benefit plan. Under ERISA, an employee benefit plan[26] must be "established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce [in the United States]."[27] This statutory rule lends context to the overarching question, which is whether any other language counters the presumption against extraterritoriality.[28]

Reliance argues that ERISA's foreign plan exemption to employee benefit plans shows the congressional intent to extend the reach of ERISA beyond the United States.[29] This exemption excludes from ERISA's reach employee benefit plans which are "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens."[30] Based on this language, Reliance contends that "Congress gave extraterritorial effect

---

[26] An "employee benefit plan" is defined as "any plan, fund, or program . . . established or maintained by an employer" for benefits that include disabilities. 29 U.S.C. § 1002(1). Disability policies with insurance companies that include classes of beneficiaries for STD and LTD benefits, the source of financing regarding premium payments by employees, and procedures for receiving benefits, reasonably establish a "plan, fund, or program" under ERISA. *Arsdel v. Liberty Life Assurance Co. of Bos.*, 175 F. Supp. 3d 464, 478 (E.D. Pa. 2016).

[27] 29 U.S.C. § 1003(a)(1). Commerce is defined as "trade, traffic, commerce, transportation, or communication between any State and any place outside thereof" and "industry or activity affecting commerce" is "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce, and includes any activity or industry 'affecting commerce' . . . ." *Id.* §§ 1002(11)–(12). Neither party disputes that this rule is intended to apply to commerce or any industry or activity affecting commerce in the United States, as "State" includes "any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, and the Canal Zone." *Id.* § 1002(10).

[28] The parties heavily dispute whether the particular employer in this case is engaged in commerce or in any industry or activity affecting commerce. *Compare* Pls.' Consolidated Mot. to Remand at 11-14 (arguing that the plan itself does not fall under ERISA since AECOM/GSS Ltd., an offshore Cayman Islands company, maintains Plaintiffs' disability benefits plan, which is primarily for the benefit of foreign nationals), *with* Defs.' Resp. in Opp'n to Pls.' Mot. to Remand at 1, 3 (contending that the United States company, AECOM, is the employer for purposes of the plan after delving into AECOM's corporate structure). This question, however, is separate and irrelevant to determining ERISA's extraterritoriality, as it remains undisputed that Plaintiffs are foreign nationals working solely in Afghanistan. Whether the employer is the United States company, AECOM, or AECOM/GSS Ltd., an offshore Cayman Islands company, therefore does not change the analysis of the central question, which is whether ERISA contemplates extraterritoriality within its language.

[29] 29 U.S.C. § 1003(b)(4).

[30] *Id.*

to ERISA unless" the foreign plan exemption applies.[31]  According to Reliance, the exemption alludes to the fact that ERISA "must apply to all plans maintained in the United States primarily for the benefit of persons who are residents," which then inferentially may include some foreign nationals.[32]

Reliance's interpretation of the foreign plan exemption, as it relates to the general employee benefit plan rule, begins with the mistaken premise that extraterritoriality can be implied, when the Supreme Court has directed that "unless there is an affirmative intention of Congress clearly expressed" to give a statute extraterritorial reach, "[courts] must presume it is primarily concerned with domestic conditions."[33]  It is true that when analyzing whether a statute applies extraterritorially, statutory context may be considered as well.[34]  However, the relevant context under ERISA assists in finding a presumption *against* extraterritoriality.

As previously noted, the broad statutory language regarding employee benefit plans is inherently domestic in nature, as the plans must be "established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce."[35]  The foreign plan exemption is only one of five provisions that state when a plan will be exempted under ERISA,[36] and therefore serves as a narrow indication of what is *not* explicitly considered an ERISA-covered plan.  It is mere speculation to conclude that this exemption means that foreign nationals working in a foreign country are within the scope of ERISA.[37]  "The question

---

[31] Defs.' Resp. in Opp'n to Pls.' Mot. to Remand at 10.

[32] Defs.' Sur-Reply in Opp'n to Pls.' Mot. to Remand at 1.

[33] *Morrison*, 561 U.S. at 255 (quoting *ARAMCO*, 499 U.S. at 248).

[34] Defs.' Resp. in Opp'n to Pls.' Mot. to Remand at 9; *Morrison*, 561 U.S. at 265.

[35] 29 U.S.C. § 1003(a)(1).

[36] *Id.* §§ 1003(b)(1)–(5).

[37] As this Court stated in *Bajrami*, the exemption may solely be directed, for example, toward a foreign plan that includes a few American citizens working abroad.  *See, e.g.*, *Pitstick v. Potash Corp. of Saskatchewan Sales Ltd.*,

7

is not whether we think 'Congress would have wanted' a statute to apply to foreign conduct 'if it had thought of the situation before the court,' but whether Congress has affirmatively and unmistakably instructed that the statute will do so."[38] As ERISA does not contain any explicit language clearly expressing extraterritorial reach, the Court must "presume [ERISA] is primarily concerned with domestic conditions."[39]

It is equally telling that within the last four decades of ERISA's enactment, no district court has held that a foreign national working abroad can bring a claim under ERISA. The Court previously addressed two cases in its *Bajrami* decision that persuasively applied the presumption against extraterritoriality to claims brought by foreign nationals.[40]

Briefly noted, the court in *Maurais v. Snyder* held that a foreign plaintiff's state law claims were not preempted by ERISA on the merits since "there is absolutely no language in ERISA which evinces a clearly expressed intent on behalf of Congress to legislate extraterritorially."[41] The court in *Chong v. InFocus Corp.* held that a foreign national working outside of the United States had no claim under ERISA "absent clear evidence of congressional intent that ERISA be applied extraterritorially," and focused on plaintiff's place of employment and other events and facts relevant to the plaintiff's denial of benefits.[42] Although Reliance now contests the application of these cases based on certain differing facts, it is the principle of these

---

698 F. Supp. 131, 132–35 (S.D. Ohio 1988) (holding that an Ohio resident bringing a denial of severance benefits claim under ERISA based on a plan maintained in Canada primarily for the benefit of Canadian employees could not bring his claim under ERISA, as the plan squarely fell within the foreign plan exemption).

[38] *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016) (quoting *Morrison*, 561 U.S. at 261).

[39] *Morrison*, 561 U.S. at 255 (quoting *ARAMCO*, 499 U.S. at 248).

[40] *See Bajrami*, 334 F. Supp. 3d at 663–64 (citing *Chong v. InFocus Corp.*, No. 08-500, 2008 WL 5205968 (D. Or. Oct. 24, 2008); *Maurais v. Snyder*, No. 00-2133, 2000 WL 1368024 (E.D. Pa. Sept. 14, 2000)).

[41] *Maurais*, 2000 WL 1368024, at *2.

[42] *Chong*, 2008 WL 5205968, at *4, 6.

cases regarding the presumption against extraterritoriality that also applies in the instant cases of foreign nationals working abroad.[43]

Finally, Reliance argues that holding that foreign nationals working abroad cannot assert claims under ERISA would undermine the uniformity Congress sought when it enacted the statute. Indeed, Congress attempted to "provide a uniform regulatory regime over employee benefits."[44] The broad-encompassing ERISA statute, however, can only extend so far as Congress allows it, before it crosses paths with the extraterritoriality doctrine.[45] Without an affirmative intention of Congress that clearly expresses that ERISA applies extraterritorially, the Court must therefore presume that ERISA "is primarily concerned with domestic conditions,"[46] and Plaintiffs' motion to remand will be granted due to a lack of subject matter jurisdiction.

## IV. CONCLUSION

For the reasons discussed, Plaintiffs' motions to remand will be granted. An appropriate order follows.

---

[43] *See also Molyneux v. Arthur Guinness & Sons, P.L.C.*, 616 F. Supp. 240, 244 n.7 (S.D.N.Y. 1985) (alluding to the difficulty in discerning under ERISA's statutory language whether ERISA may extend extraterritorially, and even after considering the language of 29 U.S.C. § 1003(b)(4)).

[44] *Davila*, 542 U.S. at 208.

[45] Reliance argues that the Supreme Court has previously extended ERISA coverage to individuals not otherwise covered by the statute because the plan itself was governed by the statute. Defs.' Resp. in Opp'n to Pls.' Mot. to Remand at 10 (citing *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6 (2004); *Wolk v. Unum Life Ins. of Am.*, 186 F.3d 352, 356 (3d Cir. 1999)). At issue in *Yates* was whether a working owner of a business could qualify as a "participant" in a pension plan for purposes of bringing claims under ERISA. *Yates*, 541 U.S. at 11. The Supreme Court held in the affirmative. *Id.* at 12. Reliance appears to overemphasize and conflate the decision's focus on uniformity under ERISA to falsely convey what would seem like the Supreme Court's willingness to expand ERISA coverage beyond what was contemplated. *See id.* at 17 ("Excepting working owners from the federal Act's coverage would generate administrative difficulties and is hardly consistent with a national uniformity goal."). The decision's primary focus turned on statutory context, where "ERISA's text contains multiple indications that Congress intended working owners to qualify as plan participants." *Id.* at 12. This case does not address the issue of foreign nationals working outside of the United States, nor does it address the extraterritorial doctrine that the Supreme Court itself has repeatedly reaffirmed.

[46] *ARAMCO*, 499 U.S. at 248 (citations omitted).